UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 95-10672

_____


UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

                      versus

ANTHONY OLUSANYA MOSES,

                                        Defendant-Appellant.

_____

Appeal from the United States District Court for the
              Northern District of Texas
_____

August 21, 1996


Before BENAVIDES, STEWART, and DENNIS, Circuit Judges.

BENAVIDES, Circuit Judge:

     Anthony Olusanya Moses ("Moses") appeals his convictions for

obtaining naturalization by fraud and making a false statement on

an INS form.  Moses argues that the evidence was insufficient to

support either conviction and the district court erred in ordering

a  revocation  of  the  approval  of  his  application  for

naturalization.[1]  We affirm in part and vacate and remand in part.

_____

[1]     Moses also argues that the district court erred by refusing to
submit  to  the  jury  the  issue  of  the  materiality  of  the  false

BACKGROUND

Moses, a Nigerian native, entered the United States sometime before 1985, married Janice Moses in 1985, and had two children. In 1987, while Janice was pregnant with their second child, the couple separated and Moses moved from their home in Shreveport, Louisiana to Texas. The children visited Moses on several occasions, and Janice apparently stayed in Moses's home at least once when she brought the children to Texas for a visit.

At no time after their separation in 1987 did Moses and Janice ever live together. Although the couple did not legally separate, Moses established a residence in the Dallas area with Dianne Anderson, with whom he had a child. Janice did not attempt to reconcile with Moses, and testified at trial that she waited until 1993 to divorce him because she could not afford the cost of instituting the divorce proceedings. She further testified that she considered the marriage over in 1987, at the time she and Moses originally separated.

On May 20, 1992, Moses filed a Form N-400, "Application to File Petition for Naturalization," in which he represented that he was living with Janice and their two children in Grand Prairie, Texas. Moses did not disclose that he was living with Anderson or

statement alleged in Count IV of the indictment. The Government concedes that the failure to submit materiality to the jury was constitutional error. <u>See</u> <u>United States v. Gaudin</u>, _ U.S. __, 115 S. Ct. 2310, 2320, 132 L. Ed.2d 444 (1995).

2

that he had fathered a child by her.  During his interview with INS examiner Leonor Aguilar, Moses stated while under oath that Janice was a homemaker and gave Aguilar a Dallas-area phone number so that Aguilar could contact her.  On August 17, 1992, Moses filed a Form N-445, "Notice of Final Naturalization Hearing," in which he represented that he had not separated from Janice since he filed the N-400 form in May 1992.  Moses became a naturalized citizen on August 28, 1992.

Moses was subsequently indicted for obtaining naturalization he was not entitled to, 18 U.S.C. § 1425(b) (Count III), and making a false statement on an INS form, 18 U.S.C. § 1001 (Count IV).[2]  He was convicted on both counts and sentenced to seven months on each count, to be served concurrently.  The district court then revoked Moses's naturalization and cancelled his citizenship.  See 8 U.S.C. § 1451(e), (f).  Moses timely appealed.


DISCUSSION

*I. Conviction under Count III*

Moses initially asserts that the evidence is insufficient to support his conviction on Count III, which alleged that Moses applied for and obtained naturalization and citizenship to which he was not entitled in violation of 18 U.S.C. §  1425(b).  The standard

---

[2]     Counts I and II of the indictment charged Moses with making false statements on HUD mortgage applications.  These counts were dismissed on the Government's motion before trial.

for reviewing a conviction for sufficiency involves determining whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed.2d 560 (1979). "The evidence adduced at trial, whether it be direct, circumstantial or both, together with all inferences reasonably drawn from it, is viewed in the light most favorable to the verdict." <u>United States v. Menesses</u>, 962 F.2d 420, 426 (5th Cir. 1992). The evidence need not exclude every reasonable hypothesis of innocence or be wholly inconsistent with every conclusion except guilt, and the jury is free to choose among reasonable constructions of the evidence. <u>See</u> <u>United States v. Bermea</u>, 30 F.3d 1539, 1551 (5th Cir. 1994), <u>cert. denied</u>, _ U.S. _, 115 S. Ct. 1113, 130 L. Ed.2d 1077 (1995), and _ U.S. _, 115 S. Ct. 1825, 131 L. Ed.2d 746 (1995).

Moses applied under a provision that permits an individual married to a United States citizen to apply for citizenship within three years of receiving resident status:

> Any person whose spouse is a citizen of the United States may be naturalized . . . if such person . . . during the three years immediately preceding the date of filing his application has been living in marital union with the citizen spouse . . . .

8 U.S.C. § 1430(a); <u>see</u> 8 C.F.R. § 319.1(b)(1) (defining "living in marital union").

Section 1425(b) criminalizes conduct whereby an individual knowingly applies for or obtains naturalization or citizenship to

4

which he or she is "not entitled."  18 U.S.C. § 1425(b).  Although no court has addressed the requirements of section 1425(b), a review of the statute reveals three elements that must be proved beyond a reasonable doubt to convict an individual:  (1) the defendant issued, procured, obtained, applied for, or otherwise attempted to procure naturalization or citizenship; (2) the defendant is not entitled naturalization or citizenship; and (3) the defendant knows that he or she is not entitled to naturalization or citizenship.  Id.  There is no dispute that Moses applied for and procured naturalization and citizenship.  Thus, our task is to determine whether the evidence sufficiently supports the other two elements.

As to the second factor, the Government had to prove that Moses was not entitled to citizenship.  Id.  Moses initially asserts that the Government failed to prove that he made false representations on his application as alleged in the indictment.  Moses concedes that a jury could find that he falsely stated on the application that Janice Moses was living with him in Texas, when in actuality she lived in Shreveport, Louisiana.  He argues, however, that there is no evidence that he made the representations on his application that were alleged in the indictment:

> [T]he defendant did falsely represent . . . that he had resided continuously in the United States in marital union with his spouse, Janice Moses, for at least three years immediately preceding the date of the Application, when in truth and in fact he did not reside with his spouse on that date and had not continuously resided with his spouse in marital union since December 1987.

5

We reject Moses's contention that the evidence is insufficient to show that he falsely represented on his application that he lived in marital union with his wife. Congress did not define the term "living in marital union" in 8 U.S.C. § 1430. The INS has defined the term as "[a]n applicant lives in marital union with a citizen spouse if the applicant actually resides with his or her current spouse." 8 C.F.R. § 319.1(b)(1). The INS thus envisions that a couple actually reside together in order for an applicant to take advantage of the "citizen spouse" provision for citizenship. Id.; see 8 U.S.C. § 1430(a). Given that the INS's interpretation of "living in marital union" is based on a permissible construction of the statute, it is entitled to great deference by this Court. See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 844-45, 104 S. Ct. 2778, 2782-83, 81 L. Ed.2d 694 (1984) (noting that "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer").

The only other Circuit[3] that specifically has addressed the issue of the correct interpretation of "living in marital union" has similarly concluded that the term requires that the applicant "actually reside[] with his current spouse for three years prior to the filing of the petition." United States v. Maduno, 40 F.3d

---

[3] The Second Circuit has suggested in dictum that "living in marital union" requires only "that a legally valid marriage remain in existence." In re Lee, 480 F.2d 673, 677 & n.6 (2d Cir. 1973).

6

1212, 1216-17 (11th Cir. 1994), cert. denied, _ U.S. _, 116 S. Ct. 123, 133 L. Ed.2d 72 (1995); see In re Bashan, 530 F. Supp. 115, 120 (S.D.N.Y. 1982) (concluding that "living in marital union" requires the applicant to actually reside with his or her citizen spouse); In re Kostas, 169 F. Supp. 77, 78 (D. Del. 1958) (noting that although short periods of separation do not prevent a finding of "living in marital union," the statute does require that an applicant "live[] in close association with a citizen spouse"). But see In re Olan, 257 F. Supp. 884, 890 (S.D. Cal. 1966) (holding that the term "living in marital union" means living in the status of a valid marriage).

We agree with the INS and the Eleventh Circuit that "living in marital union" should be construed as a requirement that the applicant actually reside with the citizen spouse in order to obtain naturalization under section 1430. See 8 C.F.R. § 319.1(b)(1); Maduno, 40 F.3d at 1217. The statute requires a marital union, not simply a marital state. It is clear that "living in marital union" indicates that the couple live together in a marital state. Although the application did not specifically ask whether Moses was living in marital union or living together with his citizen spouse, it did ask if Moses was married, the date of the marriage, and the present address of his citizen spouse. Clearly, the INS used these questions to ascertain whether Moses was living in marital union with his citizen spouse. On the application, Moses declared that he married Janice Moses in 1985

7

and was living with her and their children in Grand Prairie, Texas at the time he filed the application.  Thus, by listing Janice's address to be the same as his and by informing the INS examiner that Janice was an unemployed homemaker with a Dallas-area phone number, Moses was implicitly contending that he met the requirements of 8 U.S.C. § 1430(a).  Because the evidence at trial indicated that Moses and Janice Moses had not lived together since 1987 and Moses was living with another woman with whom he had a child, the jury could infer that Moses falsely represented that he had been living in marital union with Janice when he stated on his application that she lived at the same address as he did in Grand Prairie.[4]

The more difficult issue in this case involves whether the Government presented sufficient evidence that Moses was not entitled to citizenship based on the fact that he and Janice did not reside together.  Moses argues that even if he had truthfully answered the questions regarding the whereabouts of Janice Moses and, thus, revealed to the INS that he was separated, such an admission would not necessarily mean that he was not entitled to citizenship.  Although the INS regulations interpret "living in

_____

[4]    As Moses correctly points out, the application does not ask whether the applicant is separated, but merely inquires whether he or she is married, widowed, divorced, or single.  Although we find that the evidence sufficiently supports a jury determination that Moses falsely represented that he was living in marital union, we note that the INS could avoid this type of issue from arising again simply by including in its marital status question a block for "separated."

marital union" as residing with the citizen spouse, they do recognize exceptions to this general rule:

> Informal separation. Any informal separation that suggests the possibility of marital disunity will be evaluated on a case-by-case basis to determine whether it is sufficient enough to signify the dissolution of the marital union.

8 C.F.R. § 319.1(b)(2)(ii)(B). Moses contends that because an informal separation does not automatically preclude citizenship, and because the INS did not make an individualized determination that his separation from Janice Moses signified the dissolution of the marriage, the Government has failed to prove that Moses was not entitled to citizenship.[5] Moses relies on the testimony of Kim Ogden, an INS assistant director for examinations, that an informal separation would not necessarily preclude an applicant from obtaining citizenship. Ogden testified as an expert witness that a separation "would raise a question that we'd have to look into" to establish "whether there was a legal separation, which would raise the bar under that section; if it was an informal separation, what was the reason for the separation, things along those lines, in an effort to determine that the marriage was bona fide."

Ogden further indicated, however, that marital union means more than a legal marital status and requires that

> [a] person holds himself out to the communitySQthe couple

---

[5] Of course, Moses ignores the fact that the INS was prevented from making an individualized determination because of his misrepresentation on the form that he lived with his citizen spouse.

9

> hold themselves out to the community as man and wife. They can demonstrate that they, you know, commingle assets, joint bank accounts, beneficiaries on life insurance, they have children together, that they're generally known in the community that they live in as man and wife.

Finally, Ogden testified that it was important that the INS know the exact circumstances of where the applicant and his citizen spouse reside so that it can make further inquiries if the couple is not living together.

Leonor Aguilar, the INS examiner who handled Moses's application, testified that she routinely asked applicants applying under section 319 if they were currently living with the citizen spouse. Aguilar also stated that had Moses told her that he did not live with his citizen spouse, she would have informed him that he did not qualify for naturalization under section 319.

Although the regulations do make an exception for informal separations, the exception does not cover situations where the separation signifies the dissolution of the marital union. See 8 C.F.R. § 319.1(b)(2)(ii)(B). The evidence indicated the existence of marital disunity that was sufficient to signify the dissolution of the marital union. See id. When Moses applied for naturalization in 1992, he had not lived with Janice Moses since 1987. The evidence established that Janice Moses had no intention of reconciling with Moses, and considered the marriage over at the time the couple separated. Janice Moses testified that she delayed divorcing Moses only because she could not afford the cost of

10

instituting divorce proceedings. Janice had to file a petition to enforce payment of child support by Moses. After the couple separated, Moses established a residence in Texas with Dianne Anderson, and had a daughter with her. Moses and Anderson signed apartment leases together and maintained a joint banking account. The evidence also showed that Moses executed a HUD mortgage application in 1990, where he indicated that he was "unmarried." The warranty deed for that property listed Moses as a "single person."

Furthermore, the district court's instruction, which Moses does not complain of on appeal, allowed the jury to assess whether Moses and his wife were living in marital union at the time he filed his application:

> The factors which you may consider in deciding whether the defendant and his citizen spouse lived in "marital union," are the following:
>
> 1) whether there were prolonged and/or frequent absences by either spouse;
> 2) whether the defendant continued to support his citizen spouse and their children;
> 3) whether any separation of the defendant and his citizen spouse occurred, its duration, and whether the parties intended to separate permanently; and
> 4) whether the defendant lived in marital union with others while separated from his citizen spouse, or expressed an intention to marry someone else.

Based on the evidence outlined above and the jury instruction, a jury could clearly and unmistakably infer that the INS would not have approved Moses's application if he had been truthful about his marital situation. Ogden's testimony about the types of

11

information that the INS looks for in determining whether a marital union exists, his opinion that the INS must investigate all separations to determine whether the marriage is bona fide, and Aguilar's testimony that she would have concluded that Moses was not qualified if she had been informed of his separation, in conjunction with evidence presented concerning the reality of Moses's marital relationship with Janice, is sufficient to support the jury's determination that Moses applied for and obtained citizenship to which he was not entitled.

The Government also must prove that at the time Moses filed his "Application to File Petition for Naturalization," he knew he was not entitled to naturalization and citizenship. See 18 U.S.C. § 1425(b). The jury was presented with evidence that applicants generally know the requirements for citizenship and that such information is widely available. Moses falsely stated on his application that Janice lived with him in Texas and gave a Dallas-area phone number where she could be reached. The jury could infer from Moses's misrepresentation that he knew that the true status of his marital relationship would render him not entitled to citizenship under the "citizen spouse" provision, 8 U.S.C. § 1430(a). Thus, the third factor is satisfied. See 18 U.S.C. § 1425(b).

Because the Government presented sufficient evidence that Moses falsely represented that he was living in marital union in order to obtain citizenship to which he was not entitled, we affirm

12

the conviction under Count III.

## II. Revocation of Naturalization and Citizenship

Moses contends that the district court erred in revoking approval of his application for naturalization and canceling his certificate of citizenship. Revocation is appropriate when a person is convicted under 18 U.S.C. § 1425:

> When a person shall be convicted under section 1425 of Title 18 of knowingly procuring naturalization in violation of law, the court in which such conviction is had shall thereupon revoke, set aside, and declare void the final order admitting such person to citizenship, and shall declare the certificate of naturalization of such person to be canceled. Jurisdiction is conferred on the courts having jurisdiction of the trial of such offense to make such adjudication.

8 U.S.C. 1451(e). The provision is mandatorySQthe district court *shall* revoke the citizenship if the individual is convicted under section 1425. Id. Inasmuch as Moses was convicted in Count III of a violation of 18 U.S.C. § 1425(b), the district court did not err in revoking the application for naturalization and the final order admitting Moses to citizenship.

## III. Conviction under Count IV

Moses asserts that his conviction under Count IV must be reversed based on the insufficiency of the evidence and the district court's failure to submit the issue of materiality to the jury. Count IV alleged that Moses, in violation of 18 U.S.C. §

13

1001, intentionally made a material false statement to the INS on Form N-445 "by representing that he had not separated from his wife, when in truth and in fact, as the defendant well knew, he had separated from his wife Janice Moses in or about June 1987." Section 1001 provides:

> Whoever . . . knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations . . . shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. 1001.

The Government concedes that the failure to submit the question of "materiality" to the jury[6] violated the Constitution and necessitates a reversal on Count IV. United States v. Gaudin, _ U.S. _, 115 S. Ct. 2310, 2320, 132 L. Ed.2d 444 (1995). The Government asserts, however, that a remand to the district court is unnecessary because Moses was sentenced to serve seven months concurrently for his conviction on Counts III and IV, and "the government's confession of error on Count IV would neither prolong nor shorten the sentence to be served by appellant." The Government further asserts that Moses has already served the time, and the only issue that remains involves the $50.00 mandatory assessment.

The Government apparently has no intention of retrying Moses

---

[6] Moses objected at trial to the district court's refusal to permit the jury to determine the materiality of the false statement.

14

on Count IV.  Nevertheless, Moses has urged this Court to perform a sufficiency review.  In cases where the reversal permits the Government to retry the defendant, we must reach a sufficiency of the evidence argument because the Government may not retry the defendant if the evidence at trial was insufficient.  See <u>United States v. Meneses-Davila</u>, 580 F.2d 888, 896 (5th Cir. 1978).

Moses was charged with making a false representation on August 17, 1992 in his INS Form N-445 application.  See <u>United States v. Shah</u>, 44 F.3d 285, 289 (5th Cir. 1995) (outlining the requisite elements the Government must prove for a conviction under section 1001).  Although the indictment alleged that Moses misrepresented that he had not separated from his wife when in fact he had separated from her in 1987, the question forming the basis of the indictment asked *only* if Moses had separated from his wife after the date that he filed his petition for naturalization:  "After the date you filed your petition:  1. Have you married, or been widowed, separated, or divorced?"  Moses responded "no."  Moses argues that this was not a false statement because at the time he filed his original petition on May 20, 1992 he was married to Janice Moses, but living apart from her.  From the filing of this petition to the date Moses filed the Form N-445, there was no change in his marital statusSQhe was separated from his wife before he filed the original petition, and he remained separated from her between the filing of the petition and the filing of his N-445

15

form. Thus, Moses did not make a false statement when he responded that he had not separated from his wife after the filing of the original petition.

We do not condone, but rather condemn, Moses's lack of candor with the INS on the various documents he filed in an effort to obtain naturalization. We cannot uphold a conviction, however, where the alleged statement forming the basis of a violation of section 1001 is true on its face. Other circuits have reached a similar conclusion:

> [A] prosecution for a false statement under § 1001 or under the perjury statutes cannot be based on an ambiguous question where the response *may* be literally and factually correct. . . . An indictment premised on a statement which on its face is not false cannot survive.

United States v. Vesaas, 586 F.2d 101, 104 (8th Cir. 1978); United States v. Gahagan, 881 F.2d 1380, 1383 (6th Cir. 1989). Because Moses's response was not false on its face, the evidence was insufficient to support the conviction on Count IV.

CONCLUSION

Because the evidence sufficiently supports Moses's conviction on Count III, we affirm the conviction and the district court's order revoking Moses's naturalization and citizenship. The conviction on Count IV must be reversed both because the district court failed to present the issue of materiality to the jury and because the evidence was insufficient to support Moses's

16

conviction.  We therefore vacate the conviction and sentence on Count IV and remand the case to the district court with instructions that an order of acquittal be entered as to Count IV. AFFIRMED IN PART, VACATED AND REMANDED IN PART.