**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 02-50041

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

SON HUI SODOSKY, also known as Son Hui Yi, also known as Son Hui
Goebbel, also known as Son Hui Peak, also known as Son Hui Elmore

Defendant-Appellant.

Appeal from the United States District Court
For the Western District of Texas
(99-CR-1197)

December 5, 2002

Before HIGGINBOTHAM, DUHÉ, and DeMOSS, Circuit Judges.

PER CURIAM:[*]

Appellant, Son Hui Sodosky (Sodosky), was indicted and charged
with procurement of citizenship or naturalization unlawfully in
violation of 18 U.S.C. § 1425(b) for misstating on her
naturalization application that she had never before been

---

[*]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this
opinion should not be published and is not precedent except under
the limited circumstances set forth in 5TH CIR. R. 47.5.4.

"arrested, cited, charged, indicted, convicted, fined or imprisoned for breaking or violating any law or ordinance, excluding traffic regulations." She was convicted following a jury trial and sentenced to four years' probation and a $100 special assessment. As a result of her conviction, the district court revoked her citizenship. Appellant now appeals her conviction. We REVERSE.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant was born in Korea in 1960. She married an American soldier named Elwood C. Elmore in Korea and moved to El Paso, Texas, with him in 1980. Appellant and Mr. Elmore divorced in 1982. After her divorce, Appellant continued to use her military dependent card to receive medical services at the William Beaumont Army Medical Center. In 1984, as a result of her use of the card, she was convicted of fraud, sentenced to probation, and ordered to pay restitution to the Army Medical Center for the benefits she received. Sodosky complied with all of the conditions of her probation and paid all restitution as ordered. As a result of Sodosky's conviction, the Immigration and Naturalization Service (INS) received a copy of her indictment and an FBI memo setting out the details of the offense. To avoid deportation, Sodosky filed a motion for a recommendation against deportation with the INS in August 1984, which was successful.

In 1986, Sodosky married Detlev Goebbel and moved to Germany, where they had a son. Sodosky divorced Mr. Goebbel in 1989 and

returned to the United States on a visitor's visa, which expired on October 26, 1989. However, Sodosky was able to remain in the United States because she married Jerry Sodosky in November 1989.

In 1996, Sodosky made an application for naturalization on an INS form -400. Question 15b asked if the applicant had ever been arrested, cited, charged, indicted, fined, convicted, or imprisoned for violating any law or ordinance excluding traffic violations. The box marked "no" was checked on Sodosky's application. Mr. Sodosky signed the form indicating that he had prepared it for his wife.

After filing the application, Sodosky was informed by a letter from the INS that she would have an interview on July 25, 1996. The letter noted that she should bring the disposition of any criminal violations with her to the interview. When Sodosky went to her interview, she did not bring a copy of the judgment entered in the 1984 criminal case. She testified that the clerk's office told her it would take up to six weeks to receive a copy of the judgment. She also testified that she did not request additional time to receive the judgment before the interview because she believed the INS examiner already had knowledge of the prior proposed deportation and the basis for it.

Yolanda Miranda (Miranda) was the INS adjudications officer that interviewed Sodosky. Sodosky testified that Miranda's first question concerned Sodosky's prior deportation order. According to Sodosky, she told Miranda about her fraud conviction for using the

3

military card and that she had finished her probation and paid back all of the money she owed the Army Medical Center.

Miranda, however, testified that she did not remember interviewing Sodosky, but that she always conducts her interviews in the same manner. Miranda testified that she always reviews an applicant's "A file," which is created when a person is being processed by the INS and includes an assigned tracking number for that person. An A file is kept in the course and scope of the duties of the INS, and contains historical documents including a person's criminal history and all applications submitted to the INS. Miranda stated that there was no record of Sodosky's criminal history in her A file when she reviewed it at the interview.

Miranda further stated that she always asks applicants about question 15b on the application. Miranda testified that if Sodosky had answered "yes" to question 15b during the interview, Miranda would have noted that fact and asked Sodosky for additional information. Miranda also said that she would have had Sodosky swear to the change on her application concerning that question. According to Miranda, question 15b was an important question to review with an applicant because one of the requirements for citizenship was that an applicant have good moral character. To meet this requirement, an applicant could not have committed a crime during the five years before the submission of the application. Miranda explained that, for the good moral character requirement, she would usually look only to the five years

4

preceding the time of application, but noted that she was allowed to look prior to those five years.

Based on Sodosky's A file and interview, Miranda recommended that Sodosky's application be approved. Miranda, however, testified that she would not have made a recommendation to grant Sodosky citizenship based on her prior indictment and conviction, even though it occurred 12 years prior to her making an application. Regardless, Miranda pointed out that, although she would not have recommended Sodosky's application be approved, the ultimate decision would have been made by an assistant deputy district director.

Sodosky moved for judgment of acquittal at the close of the government's evidence, which was denied. Sodosky renewed her motion for judgment of acquittal at the end of all the evidence, which also was denied. At trial neither party filed proposed jury instructions. The district court presented the following instructions to the jury without objection from either party:

> The indictment alleges an offense under Title 18, United States Code, section 1425, which makes it a crime for anyone, whether for herself or another person, to knowingly procure or obtain evidence of nationalization or citizenship, documentary or otherwise, to which she is not entitled.
>
> For you to find Son Hui Sodosky guilty of this crime, you must be convinced that the Government has proven each of the following beyond a reasonable doubt: First: That the Defendant knowingly applied for, procured, and obtained evidence of nationalization and citizenship for herself;
>
> Second: That the Defendant did so by representing or

causing to be represented on a Form –400 Application for Citizenship that she had never committed a crime for which she had been arrested, and representing that she had never been arrested, cited, charged, indicted, convicted, fined, or imprisoned;

Third:    That the information on the Form –400 was false in that the Defendant was arrested on April 16, 1984, for fraud, a violation of Title 18, United States Code, section 1001, and was convicted of that offense on or about July 18, 1984, and;

Fourth:   That the Defendant knew the information on the Form –400 was false.

The jury reached a verdict of guilty.

On January 7, 2002, Sodosky was sentenced to a four-year term of supervised probation and a $100 special assessment. The district court also entered an Order Revoking Citizenship. Sodosky timely filed a notice of appeal on January 7, 2002, arguing that: (1) there was insufficient evidence to convict her under 18 U.S.C. § 1425(b) because there was no evidence that she was ineligible for naturalization or believed she was ineligible for naturalization and (2) the district court's failure to include in its jury instructions the elements of ineligibility for naturalization and knowledge of ineligibility was plain error.

## DISCUSSION

There is no need to reach the issue of whether the district court committed plain error in instructing the jury because we find that there was insufficient evidence to convict Sodosky under 18 U.S.C. § 1425(b). In assessing the sufficiency of the evidence to support a conviction when the appellant properly moved for a

6

judgment of acquittal as Sodosky did, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). This Court only determines whether the jury made a rational decision, not whether the decision was correct. *United States v. Dean,* 59 F.3d 1479, 1484 (5th Cir. 1995). Furthermore, this Court views all evidence adduced at trial, and all inferences reasonably drawn from it, in the light most favorable to the verdict. *Id.*

Section 1425(b), Title 18 of the United States Code, criminalizes conduct whereby a person knowingly applies for or obtains naturalization or citizenship to which he or she is "not entitled." Significantly, the only case in which this Court has addressed the elements of a section 1425(b) offense is *United States v. Moses,* 94 F.3d 182 (5th Cir. 1996), which we are bound to follow as precedent. In *Moses,* the defendant alien filed forms with the INS seeking naturalization under 8 U.S.C. § 1430, which allows an alien to apply for citizenship if he or she is married to a citizen and living in America with that citizen spouse for three years. The forms asked if Moses was married, the date of his marriage, and the present address of his citizen spouse. Moses indicated that he was living with his American wife and children, when in fact he had been separated for five years and had begun

7

another family with another woman with whom he was living. *Id.* at 184. In a later filing, in response to a question about whether his marital status had changed since the first form was filed, he answered in the negative. *Id.*

Moses was charged under 18 U.S.C. § 1001 for making a false statement by indicating that his marital status had not changed on the second form. *Id.* Moses was also charged under 18 U.S.C. § 1425(b) because he stated that he had been living in "marital union" for the three years prior to his application. *Id.* Moses was convicted on both counts. *Id.*

This Court reversed the section 1001 conviction because Moses' response had been literally true, although it was certainly misleading. *Id.* at 188. His status had not changed since he filed his first application, which contained the false representation that he was living with his wife. *Id.*

We upheld the section 1425(b) conviction, however, because Moses knew his marital status was not a "marital union," which made him ineligible for naturalization *Id.* at 187. Moses argued that a mere separation was not an automatic bar to eligibility for citizenship. *Id.* at 186. The government, however, argued that there was no marital union in the circumstances of this situation, due to the length of separation, the new family he had established, and the actual termination of any marital relationship in all but the legal sense. *Id.*

8

In **Moses,** we held that, to prove a section 1425(b) offense, the government must show beyond a reasonable doubt:

> (1) the defendant issued, procured, obtained, applied for, or otherwise attempted to procure naturalization or citizenship; (2) the defendant is not entitled [to] naturalization or citizenship; and (3) the defendant knows that he or she is not entitled to naturalization or citizenship.

*Id.* at 184. This Court determined that Moses' answer that he was living with his wife and that her address was the same as his was sufficient evidence for the jury to find that he falsely represented that he was living in marital union with a citizen wife, and to infer that Moses knew that being separated from his spouse would bar naturalization under the citizen-spouse provision. *Id.* at 186-87. We further concluded that "a jury could clearly and unmistakably infer that the INS would not have approved Moses's application if he had been truthful about his marital situation." *Id.* at 187.

**Moses** clearly is instructive here. Sodosky's application contained a false statement indicating that she previously had not been indicted or convicted. However, Sodosky was not charged under 18 U.S.C. § 1001, which makes it unlawful for anyone to "make[] any materially false, fictitious, or fraudulent statement or representation" or "make[] or use[] any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry." Thus, whether Sodosky's answer to question 15b on her INS form -400 was false is irrelevant in this

9

case.

Rather, Sodosky was only charged under 18 U.S.C. § 1425(b). Unlike in *Moses,* the government here has failed to prove two of the three elements of a section 1425(b) offense. First, the government has not proven that Sodosky was ineligible for naturalization. Second, the government has failed to prove that Sodosky knew she was ineligible for naturalization.

As already noted, Sodosky's prior conviction occurred 12 years prior to her applying for naturalization. The testimony presented at trial was that only an offense within the five years prior to application for citizenship would render an applicant ineligible. A criminal conviction prior to that time simply would be one factor the INS could consider, along with many other factors, pertaining to the applicant's good moral character. We cannot assume that Sodosky's prior conviction reflected so poorly on her character as to bar naturalization. While Sodosky fraudulently used her military dependent card, she did so only to receive medical treatment shortly after being divorced from her husband who brought her to the United States four years earlier from Korea. She complied with all of the conditions of her probation and paid all restitution as ordered. Significantly, the INS chose not to deport her after she was convicted.

Thus, we conclude that there is no evidence that Sodosky's prior conviction necessarily rendered her ineligible for

10

naturalization. Of course, if Sodosky's prior conviction did not definitely make her ineligible for naturalization, it follows that she could not have known she was ineligible for naturalization based on that conviction. Therefore, the requirements of 18 U.S.C. § 1425(b) have not been satisfied.

## CONCLUSION

For the foregoing reasons, we hold that a rational trier of fact could not have found beyond a reasonable doubt that Sodosky's prior conviction rendered her ineligible for naturalization, and that she knew that she was ineligible for naturalization as required under 18 U.S.C. § 1425(b). Therefore, we REVERSE Sodosky's conviction.

**REVERSED.**