UNITED STATES of America

v.

Aiman Nasser MOHALLA.

No. CV 07–4430 DSF (JCx).

United States District Court,
C.D. California.

March 24, 2008.

Patricia M. Corrales–Talleda, U.S. Dept. of Justice, Office of Immigration Litigation, Los Angeles, CA, for United States.

Order GRANTING Plaintiff's Motion for Partial Summary Judgment Against Defendant

**DALE S. FISCHER, District Judge.**

This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment as to Counts 1 and IV of Plaintiff's First Amended Complaint ("Motion"). Count 1 seeks revocation of Defendant's naturalization on the basis of illegal procurement of citizenship due to failure to meet the requirements of 8 U.S.C. § 1430(a). Count IV seeks revocation on the basis of procurement by willful misrepresentation or concealment of material facts.

The Court deems this matter appropriate for decision without oral argument. *See* Fed.R.Civ.P. 78; Local Rule 7–15. For the reasons discussed below, the Court GRANTS the Motion for Partial Summary Judgment.

## I. FACTS

On July 11, 2007. Plaintiff the United States of America filed its First Amended Complaint to Revoke Naturalization ("FAC") pursuant to 8 U.S.C. § 1451(a). In the FAC, Plaintiff seeks to revoke and set aside the order admitting Defendant Aiman Nasser Mohalla, a.k.a David Solomon, a.k.a. Aiman Mohulla, to citizenship and to cancel his certificate of naturalization. The FAC, as required, includes the affidavit of Senior Special Agent Phillips Salacup, Jr. of U.S. Immigration and Customs Enforcement ("ICE"), showing good cause for the action. In four counts, the FAC alleges that Defendant illegally procured United States citizenship and that his naturalization must be revoked:

**Count I:** Illegal Procurement of United States Citizenship: Defendant Failed to Meet Eligibility Requirement of 8 U.S.C. § 1430(a);

**Count II:** Illegal Procurement of United States Citizenship: Lack of Good Moral Character: False Testimony Barring Good Moral Character;

**Count III:** Procurement of United States Citizenship by Willful Misrepresentation or Concealment of Marital History;

**Count IV:** Procurement of United States Citizenship by Willful Misrepresentation or Concealment of Material Facts.

(FAC ¶¶ 24–66.)

Defendant became a lawful permanent resident of the United States on April 27, 1993. (Pl.'s Separate Statement of Uncontroverted Facts and Conclusions of Law in Supp. of Mot. for Partial Summ. J. ("UF") No. 2.) On April 29, 1996, Defendant filed an "Application for Naturalization," INS

Form N–400, with the former Immigration and Naturalization Service of the United States Department of Justice ("INS"). (UF No. 3.) Defendant's application was based on his eligibility as a lawful permanent resident who is married to a United States citizen and has been living in marital union with that citizen spouse for three years immediately preceding the examination on his application for naturalization. (UF No. 4.) When Defendant appeared for his naturalization interview on September 9, 1996, he was asked by the interviewing INS officer if he continued to live in marital union with his citizen spouse, Diane Mohalla (Ploszaj). (UF. No. 5.) Defendant testified, under oath, that he continued to live in marital union with his citizen spouse. (UF No. 5.) Defendant also affirmed, under penalty of perjury, that his responses to the questions on his naturalization application were true and correct. (UF No. 6.)

Defendant's application for naturalization was approved (UF No. 7) and in March 1997, the INS mailed to Defendant a Notice of Naturalization Oath Ceremony, INS Form N–445 (UF No. 8). Defendant was instructed to complete the questions on the reverse side of the form and present the form to the INS when he appeared at an oath ceremony. (UF No. 8.) Defendant completed the questions, including an answer that he had not been married, widowed, separated, or divorced since the date of his naturalization interview. (UF No. 10.) Defendant took the oath of allegiance and was admitted to United States citizenship and was issued Certificate of Naturalization number 23099796. (UF No. 11.)

Defendant's eligibility for naturalization was based on his marriage to Diane Ploszaj, a United States citizen. (UF No. 13.) In a sworn statement, Ms. Ploszaj declared that she and Defendant separated and ceased living together in marital union

sometime between September 1995 and December 1995. (UF No. 14.) Ms. Ploszaj also declared that at the time Defendant filed his application for naturalization, they had ceased to live together or hold themselves out as husband and wife. (UF No. 15.) Defendant petitioned for dissolution of marriage on October 25, 1996 and in that petition claimed that he had been separated from Ms. Ploszaj since March 15, 1996. (UF No. 16.) The court's order dissolving the marriage made a specific finding that Defendant and Ms. Ploszaj had separated as early as February 1, 1996, which was two months prior to Defendant filing his application for naturalization. (UF No. 17.)

## II. LEGAL STANDARD

### A. Summary Judgment

■ Courts may grant summary judgment in a party's favor "upon all *or any part*" of a party's claim. Fed.R.Civ.P. 56(a) (emphasis added). The standard and procedures for a motion for partial summary judgment are the same as for summary judgment of a claim. *See Delta Sav. Bank v. United States,* 265 F.3d 1017 (9th Cir.2001). Summary judgment shall be granted where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

■ The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Because the moving party here has the burden of proof at trial, it must establish "beyond controversy every essential element" of its claim. *So. Cal. Gas Co. v. City of Santa Ana,* 336 F.3d 885, 888 (9th Cir.2003) (citation and

internal quotation marks omitted) (adopting the district court's opinion). The moving party need not disprove the opposing party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Rather, if the moving party satisfies this burden, the party opposing the motion must set forth specific facts, through affidavits or admissible discovery materials, showing that there exists a genuine issue for trial. *Id.* at 323–24, 106 S.Ct. 2548: Fed.R.Civ.P. 56(e).

The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported summary judgment motion; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505. An issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. *Id.* at 250–51, 106 S.Ct. 2505. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. 2505.

### B. Standard For Denaturalization

Citizenship, once conferred, should not be taken away without the clearest justification and proof. *Schneiderman v. United States*, 320 U.S. 118, 63 S.Ct. 1333, 87 L.Ed. 1796. 122 (1943); *Gorbach v. Reno*, 219 F.3d 1087, 1100 (9th Cir.2000). In an action under 8 U.S.C. § 1451(a) to revoke a grant of United States citizenship previously conferred, the facts and the law should be construed as far as reasonably possible in favor of the citizen. *Schneiderman*, 320 U.S. at 122, 63 S.Ct. 1333. "The evidence justifying revocation of citizenship must be clear, unequivocal, and convincing and not leave the issue in doubt." *Fedorenko v. United States*, 449 U.S. 490, 505, 101 S.Ct. 737, 66

L.Ed.2d 686 (1981) (quotations omitted). Once the Court has determined that the government has met its burden of proof, it has no discretion to excuse the conduct. *Id.* at 517, 101 S.Ct. 737.

Under 8 U.S.C. § 1451(a). a citizen's naturalization must be revoked and his certificate of naturalization canceled if his naturalization was either 1) illegally procured or 2) procured by concealment of a material fact or by willful misrepresentation. There must be strict compliance with all congressionally imposed prerequisites to the acquisition of citizenship. *Fedorenko*, 449 U.S. at 506, 101 S.Ct. 737. Failure to comply renders the certificate "illegally procured," and naturalization that is unlawfully procured can be set aside. *Id.*; 8 U.S.C. § 1451(a).

Although the government bears a heavy burden in denaturalization proceedings, the facts of a case may be such that a revocation of citizenship at the summary judgment stage may be appropriate. *United States v. Dailide*, 227 F.3d 385, 389 (6th Cir.2000). *See e.g., United States v. Dang*, 488 F.3d 1135 (9th Cir.2007); *United States v. Koreh*, 59 F.3d 431 (3rd Cir. 1995).

### III. DISCUSSION

**A. Summary Judgment Is Proper Because Defendant Illegally Procured His Naturalization, Given That He Was Not Living in Marital Union With His Citizen Spouse at the Time He Applied for Naturalization.**

Failure to comply with any statutorily required condition renders the certificate of citizenship "illegally procured." and naturalization that is unlawfully procured can be set aside. *Fedorenko*, 449 U.S. at 506, 101 S.Ct. 737. An applicant seeking naturalization as the spouse

of a citizen must be living in marital union with his or her citizen spouse during the three years immediately preceding the date of filing the application. See 8 U.S.C. § 1430(a). Although Congress has not defined the term "living in marital union," the INS has promulgated administrative regulations that explain that "[a]n applicant lives in marital union with a citizen spouse if the applicant actually resides with his or her current spouse." 8 C.F.R. § 319.1(b)(1). Given that the INS's interpretation of "living in marital union" is based on a permissible construction of the statute, it is entitled to great deference by this Court. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 844–45, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (noting that "considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer").

 Plaintiff contends that this interpretation requires that the couple actually reside together in order for the applicant to be eligible for naturalization under the "citizen spouse" provision. (Mot. at 16.) The Circuits that have specifically addressed the issue of the correct interpretation of "living in marital union" have similarly concluded that the term requires that the applicant actually reside with his or her citizen spouse to be eligible for naturalization. *See United States v. Moses,* 94 F.3d 182, 185 (5th Cir.1996); *United States v. Maduno,* 40 F.3d 1212, 1216–17 (11th Cir.1994). *But see In re Olan,* 257 F.Supp. 884, 890 (S.D.Cal.1966) (holding that the term "living in marital union" means living in the status of a valid marriage).

In his application for naturalization dated April 25, 1996, Defendant declared that he was eligible based on his marriage to Diane Mohalla (Ploszaj) and that they resided together at the time of the application. (Mot.Ex. 3.) Defendant then testified under oath during his naturalization interview on September 9, 1996, that he continued to live in marital union with his wife. (*Id.* Ex. 4.)

However, based on the uncontroverted facts, at the time Defendant filed his application for naturalization, he was not living in marital union with his wife. In her declaration, Diane Ploszaj stated that she and Defendant informally separated between September 1995 and December 1995. (*Id.* Ex. 7.) In his petition for dissolution of marriage filed on October 25, 1996, Defendant claims that he had been separated from Ms. Ploszaj since March 15, 1996. (*Id.* Ex. 8.) Based on either account. Defendant and his citizen wife had separated prior to April 25, 1996, when Defendant applied for naturalization. Defendant's separation from his citizen spouse prior to the submission of his application means that he could not show that he was living in a marital union with his citizen spouse for three years preceding his filing for naturalization as his separation made him unable to meet this requirement. This is clear, convincing, and unequivocal evidence. Thus, as a matter of law, Defendant was unable to satisfy the requirement that he and his citizen spouse were "living in marital union." His admission to citizenship was illegally procured and should be revoked.

The Court therefore GRANTS the government's motion for summary judgment on Count I of the complaint.

**B. Summary Judgment Is Proper Because Defendant's Naturalization Was Procured by Willful Misrepresentation or Concealment of Material Facts.**

 Pursuant to 8 U.S.C. § 1451(a), naturalization is subject to revocation when it is "procured by concealment of a

material fact or by willful misrepresentation." There are four independent requirements for revocation of naturalization under this provision: (1) the naturalized citizen must have misrepresented or concealed some fact; (2) the misrepresentation or concealment must have been willful; (3) the fact must have been material; and (4) the naturalized citizen must have procured citizenship as a result of the misrepresentation or concealment. *Kungys v. U.S.*, 485 U.S. 759, 767, 108 S.Ct. 1537, 99 L.Ed.2d 839 (1988).

### 1. Defendant Misrepresented or Concealed the Fact that He Had Separated from His Citizen Wife and Filed for Divorce.

■■■ Defendant misrepresented or concealed the fact that his marital status had changed in each interaction with the INS. Although the naturalization application did not specifically ask Defendant whether he continued to live "in marital union," it did ask for Defendant's marital status, his present address, and the present address of his spouse, which he listed to be the same as his. (Mot.Ex. 3.) During his naturalization interview, Defendant was asked to confirm whether he and his citizen spouse continued to live in marital union and Defendant represented to the INS agent conducting the interview that he continued to live with his citizen spouse. (*Id.* Ex. 4 ¶¶ 12–15.) At his oath ceremony, Defendant completed and submitted Form N–445, Question 1 of which asked specifically if, since the date of his first interview, he had been married, widowed, separated, or divorced. (*Id.* Ex. 5 at 2.) Defendant answered "No" to this question and signed the form, certifying that his answers were true and correct. (*Id.*)

Defendant misrepresented the changes to his marital status. By listing his address to be the same as his wife's address on his application for naturalization, Defendant was contending that he met the requirements of § 1430(a). *See Moses*, 94 F.3d at 185–6 (upholding a criminal conviction for obtaining naturalization and citizenship to which defendant was not entitled where he falsely represented that he had been living in marital union with his spouse by stating on his application that they lived at the same address). At the time of his interview, based on the date of their separation. Defendant had ceased living in marital union with his citizen spouse. (Mot.Exs.5, 8.) Defendant did not change or amend his answers to his application at any time before he became a naturalized citizen.

In addition. Defendant's response to Question 1 of Form N–445 did not accurately represent his marital status. On October 25, 1996, almost two months after his initial naturalization interview. Defendant had filed for dissolution of his marriage to Diane Mohalla (Ploszaj). (*Id.* Exs. 7, 8.) Defendant did not disclose this fact to the INS when he filled out the forms required for the naturalization oath ceremony, which specifically inquired as to any changes in marital status. (*Id.* Ex. 5.) Defendant's answers on Form N–445 may not be technically incorrect, given that he was separated prior to his naturalization interview and that his divorce was not finalized until after he took the oath. (*See Id.* Exs. 5, 8.) However, this does not change the fact that Defendant never alerted the INS to the fact that he was no longer living in marital union with his citizen spouse, a fact that gave rise to his eligibility to naturalize.

### 2. Defendant's Misrepresentation or Concealment Was Willful.

■■■ Misrepresentations to the INS are willful if they were deliberate and voluntary. *Espinoza–Espinoza v. INS*, 554

F.2d 921, 925 (9th Cir.1977) (construing an analogous statute). There is no requirement that intent to deceive the government be shown. *Id.* Knowledge of the falsity of a representation is sufficient to establish willful misrepresentation. *Forbes v. INS,* 48 F.3d 439, 442 (9th Cir. 1995).

At the time Defendant filed his application for naturalization, he knew that he was separated from his wife. (*See* Mot. Exs. 4, 7, 8.) At the time Defendant presented himself for his citizenship oath, he knew that he had filed papers for dissolution of his marriage to his citizen spouse. (*Id.* Exs. 5, 7, 8.) At no time did Defendant alert the INS to these changes, although he was asked to confirm the fact that he and his citizen spouse were in fact living in marital union when he filed his naturalization application (*id.* Ex. 3), again during his naturalization interview (id Ex. 4), and finally directly before he took his citizenship oath (*id.* Ex. 5). Based on the uncontroverted evidence. Defendant knew that the answers he provided did not reflect changes to his marital union and willfully misrepresented this fact.

### 3. Defendant's Misrepresentation or Concealment Was Material.

 The test of whether a defendant's concealment or misrepresentation was material is "whether the misrepresentation or concealment had a natural tendency to produce the conclusion that the applicant was qualified." *Kungys,* 485 U.S. at 771–72, 108 S.Ct. 1537. A misrepresentation or concealment has such a tendency if honest representation would predictably have disclosed other facts relevant to the applicant's qualifications. *Forbes,* 48 F.3d at 442–43 (citations omitted). The government must produce evidence sufficient to raise a fair inference that a statutory disqualifying fact actually existed.

*Id.* The issue of materiality is a legal question. *Kungys,* 485 U.S. at 772, 108 S.Ct. 1537.

Defendant's misrepresentation or concealment of the fact that he was separated and had filed for divorce was material because Defendant was eligible to apply for naturalization based on his marriage to a United States citizen. *Cf. id.* at 774, 108 S.Ct. 1537 (holding that defendant's misrepresentation of the date and place of his birth in his naturalization petition was not material because there was no indication that those facts were relevant to his qualifications for citizenship). Unlike the defendant in *Kungys,* here Defendant misrepresented or concealed facts that were central to the determination of his eligibility. Because living in a marital union with a citizen was a statutory prerequisite for naturalization under § 1430(a), and Defendant could not meet that requirement, he was disqualified from naturalizing. Thus, Defendant's misrepresentation or concealment of his separation from his citizen spouse was material.

### 4. Defendant Procured Citizenship as a Result of the Misrepresentation.

 Once the government establishes that the misrepresentation or concealment was "material," a presumption arises that the citizen who obtained naturalization was disqualified, and the burden shifts to the naturalized citizen to show that the statutory requirement was in fact met. *See Kungys,* 485 U.S. at 777, 108 S.Ct. 1537.

Here. Defendant applied for naturalization based on his marriage to a United States citizen. Because he could not have met the statutory requirements set forth if he accurately portrayed his marital situation to the INS, Defendant procured his citizenship as a result of the misrepresentation of his marital status.

Because the government has met the requirements for revocation of naturalization that has been procured by concealment of a material fact or by willful misrepresentation, the Court GRANTS the government's motion for summary judgment on Count TV of the complaint.

## IV. CONCLUSION

Based on the foregoing, Plaintiff's motion for partial summary judgment is GRANTED. Summary judgment is entered in favor of Plaintiff and against Defendant in this action on Counts 1 and IV.

IT IS SO ORDERED.

## JUDGMENT

IT IS ORDERED, ADJUDGED, AND DECREED THAT judgment is entered in favor of Plaintiff and against Defendant on Counts I and IV:

IT IS FURTHER ORDERED THAT judgment is entered revoking and setting aside the naturalization of Defendant ordered by the Attorney General of the United States, admitting Defendant to United States citizenship, and canceling Certificate of Naturalization No. 23099796.

IT IS FURTHER ORDERED THAT judgment is entered forever restraining and enjoining Defendant from claiming any rights, privileges, or advantages under any document that evidences United States citizenship obtained as a result of Defendant's March 27, 1997 naturalization.

IT IS FURTHER ORDERED THAT judgment is entered requiring Defendant to surrender and deliver his Certificate of Naturalization, and any copies thereof in his possession (and to make good faith efforts to recover and then surrender any copies thereof that he knows are in possession of others), to the Attorney General immediately; and return any other indicia of United States citizenship, and any cop-ies thereof in his possession (and to make good faith efforts to recover and then surrender any copies thereof that he knows are in possession of others), including, but not limited to, United States passport, voter registration card, and other voting documents.

IT IS SO ORDERED.