

# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**

### NO. 02-16-00360-CR

DANIEL ROSSI                                                                    APPELLANT

V.

THE STATE OF TEXAS                                                               STATE

----------

### FROM COUNTY CRIMINAL COURT NO. 2 OF TARRANT COUNTY
### TRIAL COURT NO. 1441426

----------

## MEMORANDUM OPINION[1]

----------

Appellant Daniel Rossi appeals from his conviction for driving while intoxicated (DWI), arguing that the trial court erred by denying his motion to suppress the evidence of his intoxication because his encounter with the police was not consensual and was initiated without reasonable suspicion. Because

----------

[1]*See* Tex. R. App. P. 47.4.

Appellant's arrest was the result of a consensual encounter with the police, we affirm the trial court's denial.

## I. PROCEEDINGS IN THE TRIAL COURT

Appellant was charged by information with driving while intoxicated. He filed a pretrial motion to suppress all evidence of his intoxication, arguing that his initial encounter with the police at his home was neither consensual nor supported by reasonable suspicion; therefore, his subsequent warrantless arrest was unlawful.

### A. TESTIMONY ADDUCED AT THE SUPPRESSION HEARING

The trial court held an evidentiary hearing on Appellant's motion and heard testimony from the two arresting officers—Colleyville Police Officers Keith Bruner and Elias Olivarez—and Appellant's father, Albert Rossi. Bruner testified that he was dispatched to an abandoned car at 2:19 a.m. on December 13, 2015, based on a 911 call. It was raining heavily at the time. The 911 caller had stated that a car had been involved in a single-car accident on a residential street; that the driver was a young, white male who unsuccessfully attempted to drive the car away from the accident; and that someone came to pick up the driver, leaving the disabled car. Bruner stated that the time period between 12:00 a.m. and 3:00 a.m. was the busiest time for DWI offenses because the bars in Colleyville close at 2:00 a.m. When Bruner and Olivarez arrived at the scene, they saw an abandoned car parked perpendicular to the curb, partially blocking the other side of the residential street. The car was not drivable, with one tire having been

2

"snapped away from the actual suspension of the car." Bruner stated that it looked as if the driver had turned on the wrong street, which was common with intoxicated drivers in Bruner's experience. Bruner found it "unusual" that the driver "hadn't waited with the vehicle or moved the vehicle, had a tow truck called to the scene or anything like that."

Bruner ran the license plate and discovered that the owner of the car lived on the next street, approximately 0.1 miles away. Both Bruner and Olivarez went to the address "to attempt to make contact because the vehicle was in the middle of the street in a public roadway illegally parked." Bruner explained that based on the 911 call, he would not "be doing [his] due diligence if [he] didn't attempt to follow up with the driver." Bruner also believed that based on the circumstances that night and his experience with DWI offenses, the driver could have been impaired. Olivarez also believed the circumstances indicated that it was highly likely the accident was "substance or alcohol related."

Albert answered the door and confirmed that the car belonged to his son, Appellant, and that he had wrecked it on the next street over, resulting in Albert's going to pick him up and bring him home. Albert invited Bruner inside the house and told Bruner that they planned to have the car towed later in the day.[2] When Bruner asked if he could speak with Appellant, Albert called for his son to come

---

[2]Olivarez entered the home shortly thereafter because he initially was "out on the street looking for somebody who may be injured or walking around or whatever the case may be."

3

downstairs. Bruner noticed as Appellant came down the stairs that his eyes "were watering" and that "his steps were heavy, he swayed as he walked down the stairs[,] and he had to support his weight on the bannister to keep his balance." Appellant told Bruner that he had been driving the car and that he had consumed two beers at approximately 9:30 p.m. Olivarez testified that neither Appellant nor Albert asked the officers to leave. The officers arrested Appellant without a warrant for driving while intoxicated.[3]

Albert testified that when he answered the door, Bruner asked twice to speak with Appellant. Albert did not initially call for Appellant because Appellant was "fine" and "sleeping." Albert "got the impression [Bruner] wasn't going to leave," so he invited Bruner into the home because it was raining. Albert then called for Appellant to come downstairs to show Bruner that Appellant "was okay." Albert admitted he never asked the officers to leave his home but he threatened "to tape them if they [did not] stop with this nonsense and tell [him] what [they] want[ed]."

### B. TRIAL COURT'S FINDINGS AND CONCLUSIONS

The trial court denied Appellant's motion and entered findings of fact and conclusions of law. *See State v. Cullen*, 195 S.W.3d 696, 699 (Tex. Crim. App. 2006). In its findings, the trial court determined that Albert invited Bruner into the

---

[3]Appellant did not argue at the hearing that his warrantless arrest did not fall within a statutory exception to the warrant requirement. *See* Tex. Code Crim. Proc. Ann. arts. 14.01–.02, 14.04 (West 2015), art. 14.03 (West Supp. 2016).

home "because it was cold and wet outside." Bruner then twice asked to speak with Appellant, and Albert called Appellant to come downstairs after the second request. The trial court also found that "[t]here was no testimony that [Appellant] did not consent to speak with Officer Bruner." Based on these findings, the trial court concluded that "[t]he interaction between [Appellant] and Officer Bruner was a consensual encounter" that did not implicate constitutional concerns.

## C. CONVICTION

Appellant then pleaded guilty to the information and "affirmatively waive[d] all rights to appeal this cause." The trial court certified on the plea-bargain papers that "this criminal case is a plea bargain and has no right of appeal; or [Appellant] has waived all right to appeal." In compliance with the terms of Appellant and the State's plea-bargain agreement, the trial court found Appellant guilty, sentenced him to ninety days' confinement, suspended imposition of the sentence, and placed him on community supervision for twelve months.

Appellant filed a notice of appeal, challenging the trial court's denial of his pretrial motion to suppress. The trial court signed a Rule 25.2(d) form, certifying that Appellant's conviction was the result of a plea bargain but that it had granted Appellant permission to appeal. *See* Tex. Code Crim. Proc. Ann. art. 44.02 (West 2006); Tex. R. App. P. 25.2(a)(2)(B), (d); *cf. Monreal v. State*, 99 S.W.3d 615, 622 (Tex. Crim. App. 2003) ("[A] valid waiver of appeal, whether negotiated or non-negotiated, will prevent a defendant from appealing *without the consent of the trial court.*" (emphasis added)).

5

## II. CONSENSUAL ENCOUNTER

### A. SUPPRESSION STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We give almost total deference to a trial court's rulings on questions of historical fact and application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor, but we review de novo application-of-law-to-fact questions that do not turn on credibility and demeanor. *Amador*, 221 S.W.3d at 673.

Stated another way, when reviewing a trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede v. State*, 214 S.W.3d 17, 24 (Tex. Crim. App. 2007). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *State v. Kelly*, 204 S.W.3d 808, 818–19 (Tex. Crim. App. 2006). We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id.* at 818.

## B. CONSTITUTIONAL PRINCIPLES

The United States and Texas Constitutions[4] protect individuals from unreasonable searches and seizures; however, not every interaction between an individual and the police triggers these protections. *See* U.S. Const. amend. IV; Tex. Const. art. I, § 9; *Florida v. Bostick*, 501 U.S. 429, 434, 111 S. Ct. 2382, 2386 (1991); *Pennywell v. State*, 127 S.W.3d 149, 152 (Tex. App.—Houston [1st Dist.] 2003, no pet.). Such interactions fall into three categories: encounters, investigative detentions, and arrests. *See State v. Perez*, 85 S.W.3d 817, 819 (Tex. Crim. App. 2002).

Encounters are consensual interactions that the individual is free to terminate at any time and are not considered a seizure for constitutional purposes. *See Johnson v. State*, 912 S.W.2d 227, 235 (Tex. Crim. App. 1995) (op. on reh'g). Accordingly, a police officer requires neither probable cause nor reasonable suspicion to engage in an encounter. *See id.* "'So long as a reasonable person would feel free to disregard the [officer] and go about his business,' a police officer may approach and ask an individual questions, including whether that individual requires assistance, without implicating" constitutional concerns. *Corbin v. State*, 85 S.W.3d 272, 276 (Tex. Crim. App. 2002) (quoting *Bostick*, 501 U.S. at 434, 111 S. Ct. at 2386). It follows, then, that a police officer may knock on someone's door and ask to speak with someone

---

[4]Appellant has raised both the federal and state constitutions in his arguments regarding the motion to suppress.

with no justification as long as the encounter remains consensual. *See State v. Garcia-Cantu*, 253 S.W.3d 236, 243 (Tex. Crim. App. 2008). An encounter crosses the line to an investigative detention, requiring reasonable suspicion, if "official coercion" is present:

> Police officers are as free as any other citizen to knock on someone's door and ask to talk with them . . . . Police officers may be as aggressive as the pushy Fuller-brush man at the front door, the insistent panhandler on the street, or the grimacing street-corner car-window squeegee man. All of these social interactions may involve embarrassment and inconvenience, but they do not involve official coercion. It is only when the police officer "engages in conduct which a reasonable man would view as threatening or offensive even if performed by another private citizen," does such an encounter become a seizure. It is the display of official authority and the implication that this authority cannot be ignored, avoided, or terminated, that results in a Fourth Amendment seizure. At bottom, the issue is whether the surroundings and the words or actions of the officer and his associates communicate the message of "We Who Must Be Obeyed."

*Id.* (quoting 4 Wayne R. LaFave, *Search & Seizure: A Treatise on the Fourth Amendment* § 9.4(a) (4th ed. 2004)); *see also Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005) (describing reasonable suspicion justifying an investigative detention).

To determine whether an interaction with police officers is an encounter or an investigative detention, we focus on whether the officer's conduct suggested that compliance with his requests was required. *See Johnson v. State*, 414 S.W.3d 184, 193 (Tex. Crim. App. 2013). In doing so, we consider whether the totality of the circumstances would have allowed a reasonable person to feel free to decline the officer's requests or otherwise end the encounter. *See id.*

8

The dispositive question, however, focuses on the officers' conduct. *See Hunter v. State*, 955 S.W.2d 102, 104 (Tex. Crim. App. 1997). Circumstances indicating that an investigative detention occurred would be, for example, "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *United States v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 1877 (1980). Again, "[a]s long as the person to whom questions are put remains free to disregard the questions and walk away, there has been no intrusion upon that person's liberty or privacy as would under the Constitution require some particularized and objective justification." *Id.*

### C. APPLICATION

In two issues, Appellant argues that his encounter with the officers, especially Bruner, was not consensual because Albert summoned him only "under orders of the police." Appellant contends that once he came downstairs "to the presence of multiple police officers in his home," he "clearly yielded to an officer's show of authority under circumstances in which [he] believe[d] that he was not free to leave." He further asserts that because Albert was "order[ed]" to make Appellant come downstairs to talk to the officers, Appellant "would obviously not reasonably believe he could terminate such an encounter." These facts, urges Appellant, transform Bruner's actions into an investigative detention

9

without reasonable suspicion, requiring suppression of all evidence procured as a result of Bruner's questioning.

Here, the trial court found that Albert invited Bruner into his home to get out of the rain and cold.  It further found that Albert called Appellant to come downstairs after Bruner twice asked him to do so, but that Appellant then consented to speak with Bruner.  These facts, which were based on the admitted evidence and credibility determinations made by the trial court to which we must defer, carry none of the indicia of official coercion such that the encounter was transformed into an investigative detention.  *See State v. Castleberry*, 332 S.W.3d 460, 467–68 (Tex. Crim. App. 2011); *Garcia-Cantu*, 253 S.W.3d at 243.

The totality of the circumstances revealed by the admitted evidence before the trial court did not show that the officers led Appellant to reasonably believe that he was required to submit to Bruner's questioning or could not end the encounter.  *See State v. Woodard*, 341 S.W.3d 404, 411 (Tex. Crim. App. 2011); *Aguirre v. State*, No. 01-11-00189-CR, 2012 WL 2922547, at *5 (Tex. App.—Houston [1st Dist.] July 5, 2012, pet. ref'd) (mem. op., not designated for publication); *Paulea v. State*, Nos. 04-09-00293-CR, 04-09-00294-CR, 04-09-00295-CR, 2010 WL 1068176, at *5 (Tex. App.—San Antonio Mar. 24, 2010, pets. ref'd) (mem. op., not designated for publication); *Citizen v. State*, 39 S.W.3d 367, 371 (Tex. App.—Houston [1st Dist.] 2001, no pet.).  Indeed, Appellant was in his own home and could have ended the encounter at any time.  *See Kentucky*

10

*v. King*, 563 U.S. 452, 469–70, 131 S. Ct. 1849, 1862 (2011); *United States v. Danhach*, 815 F.3d 228, 233–34 (5th Cir.), *cert. denied*, 137 S. Ct. 119 (2016). Appellant's reliance on Albert's belief that he had no option but to summon Appellant is misplaced; we are to determine whether Appellant's encounter was consensual, not Albert's. Further, his assertion that Albert's testimony shows that Bruner's version of events was a "gross mischaracterization" of his conversation with Albert fails to recognize that we cannot second-guess the trial court's credibility determinations, which were supported by the admitted evidence, or that the trial court found that Bruner asked Albert to call for Appellant more than once, which was consistent with Albert's testimony. The totality of the circumstances surrounding Appellant's encounter with the officers show that it was consensual, which does not implicate constitutional concerns or require any particularized justification for it. *See generally* 40 George E. Dix & John M. Schmolesky, *Texas Practice Series: Criminal Practice and Procedure* § 10:17 (3d ed. 2011) (discussing circumstances relevant to coerciveness of encounter and what constitutes investigatory detention based on police conduct).

### III. CONCLUSION

The trial court concluded that the exchange between the officers and Appellant was a consensual encounter, which was supported by the admitted evidence and the trial court's implicit credibility determinations; therefore, we are bound by the governing standard of review and must likewise conclude that the officers' interaction with Appellant was not an investigative detention, requiring

reasonable suspicion to pass constitutional muster. Accordingly, the trial court did not err by denying Appellant's motion to suppress. We overrule Appellant's issues arguing otherwise and affirm the trial court's order. *See* Tex. R. App. P. 43.2(a).

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL: LIVINGSTON, C.J.; GABRIEL and PITTMAN, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: April 27, 2017