# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-50409

United States Court of Appeals
Fifth Circuit

**FILED**

July 12, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff–Appellee,

v.

WISSAM ALLOUCHE, also known as Wissam Ismail Allouche, also known as Wissam I. Allouche,

Defendant–Appellant.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:13-CR-420

ON PETITION FOR REHEARING

Before STEWART, Chief Judge, and PRADO and SOUTHWICK, Circuit Judges.

PER CURIAM:*

We deny the petition for rehearing en banc but grant panel rehearing. We withdraw our earlier opinion, which affirmed Defendant–Appellant Wissam Allouche's convictions under 18 U.S.C. §§ 1001 and 1425(b). We now

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-50409

substitute therefor the following, which affirms the § 1001 conviction but reverses the § 1425(b) conviction:

Allouche was convicted of unlawfully procuring citizenship by making false statements about his marriage in violation of 18 U.S.C. § 1425(b) and of making a materially false statement on a security clearance form in violation of 18 U.S.C. § 1001. The district court sentenced him to sixty months' imprisonment and revoked his U.S. naturalization and citizenship pursuant to 8 U.S.C. § 1451(e). On appeal, Allouche raises eleven issues challenging these convictions and his sentence. We address only whether sufficient evidence supported Allouche's § 1425(b) conviction. Because we find such evidence lacking, we reverse Allouche's conviction for unlawfully procuring citizenship in violation of § 1425(b). Having reviewed the other challenges raised by Allouche on appeal and finding no error, we affirm Allouche's conviction for making a materially false statement in violation of § 1001.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Allouche was born in Beirut, Lebanon, in 1968. In the early 1980s, he joined an organization called the Amal Militia. The Amal Militia was founded in the 1970s and was associated with Shia Muslims in Lebanon. Dr. Matthew Levitt, an expert on counterterrorism and intelligence, testified that "Amal was engaging in the types of case[s], textbook case study actions that you would describe as terrorism." As a member of the Amal Militia, Allouche was trained in the use of assault weapons, rocket-propelled grenades ("RPGs"), and explosives. Allouche also fought against Israel in the 1982 Lebanese–Israeli War. Israeli soldiers captured Allouche and held him as a prisoner of war for eighteen to twenty-four months. Upon his release from Israeli custody, Allouche rejoined the Amal Militia in Lebanon. He was then given command of approximately 200 fighters in Deir Al Zahrani, a city in southern Lebanon. Allouche left Lebanon in 1987 and went to Germany.

No. 15-50409

In 1997, Allouche met Jennifer Danko, an officer in the U.S. Army Medical Services Corps, while she was stationed in Germany. Danko and Allouche were married roughly a year and a half later. In 2002, Danko was transferred from Germany to Fort Sam Houston in San Antonio, Texas. Allouche accompanied Danko to San Antonio. In 2006 or 2007, Allouche took a job as a contract interpreter for the U.S. Armed Forces in Iraq. In December 2007, Danko filed for a divorce from Allouche. Later that month, Danko served Allouche with divorce papers after he returned to the United States from Iraq. According to Danko's petition for divorce and Allouche's counterpetition, they separated and ceased living together in December 2007.

In September 2008, Allouche submitted a naturalization application with the aid of counsel. The Department of Homeland Security ("DHS") considered Allouche's eligibility to naturalize under two sections of the Immigration and Nationality Act ("INA"): Sections 316 and 319. Section 316 provides in relevant part that a lawful permanent resident may obtain citizenship if: (1) after being lawfully admitted, he has continuously resided in the United States for at least five years immediately preceding the filing of the application, has been physically present in the United States for at least half of that time, and has resided in the state or district of the United States where the application was filed for at least three months; (2) he has continually resided "within the United States from the date of the application up to the time of admission to citizenship"; and (3) the person is "of good moral character." 8 U.S.C. § 1427(a). Section 319 provides in part that a lawful permanent resident who is married to a U.S. citizen may obtain citizenship if "during the three years immediately preceding the date of filing his application" he "has been living in marital union with the citizen spouse." 8 U.S.C. § 1430(a). Pursuant to 8 C.F.R. § 319.1(b)(1), "marital union" means that the applicant must "actually reside[] with his or her current spouse." This

3

regulation also provides that "legal separation will break the continuity of the marital union." *Id.* § 319.1(b)(2)(ii)(A). "Any informal separation that suggests the possibility of marital disunity," however, "will be evaluated on a case-by-case basis to determine whether it is sufficient enough to signify the dissolution of the marital union." *Id.* § 319.1(b)(2)(ii)(B).

Stanley Shaffer, a DHS Immigration Adjudication Officer, conducted Allouche's naturalization interview in January 2009. At some point prior to the interview, DHS decided to evaluate Allouche's eligibility under Section 319—the marital provision—but not Section 316. Shaffer found that Allouche met the requirements for naturalization under Section 319, and Allouche obtained citizenship shortly thereafter.

According to Shaffer, Allouche testified under oath that he had been living with his wife, Jennifer Danko, for the prior three years. Allouche did not disclose that he and Danko had not lived together since 2007, that she had filed for divorce, or that they had separated. Shaffer also testified that Allouche answered "No" both orally and in writing to the question: "Have you ever been a member of or in any way associated either directly or indirectly with a terrorist organization." Allouche did not disclose that he had been a member of the Amal Militia. According to Shaffer, had Allouche answered these questions honestly, he would have been disqualified from obtaining U.S. citizenship.

In 2009, Allouche applied for security clearance. Dempsie Fuqua, a security clearance background investigator with the Office of Personnel Management, was assigned to investigate Allouche's application. Fuqua testified that on Allouche's SF-86 security clearance application form, Allouche answered "No" to the question whether he had "ever participated in militias, not including official state government militias, or paramilitary groups." Allouche again did not disclose his prior membership in the Amal Militia.

No. 15-50409

Fuqua also noted that Allouche did not disclose his Lebanese citizenship on the form as required.

Special Agent James Moss, an Army counterintelligence officer who served on the FBI's Joint Terrorism Task Force, testified that he was assigned to investigate Allouche in 2010. This investigation revealed Allouche's involvement with the Amal Militia. Special Agent Moss also discovered that Allouche altered a Department of Defense authorization letter while he was serving as a contract interpreter in Iraq. On the altered letter, Allouche changed his job title; changed his citizenship from German to American; falsely stated that he had Top Secret security clearance; changed his job level from GSE-12 to GSE-14; and changed his weapons authorization from no weapons to being allowed to carry a weapon.

In May 2013, Allouche was indicted by a federal grand jury. Count I charged Allouche with unlawfully procuring citizenship in violation of 18 U.S.C. § 1425(b) by failing to disclose his prior involvement in a terrorist organization. Count II charged Allouche with unlawfully procuring citizenship in violation of 18 U.S.C. § 1425(b) by making false statements regarding his marriage. Count III charged Allouche with violating 18 U.S.C. § 1001 by falsely stating on a federal security clearance form that he had never been a member of a nonstate militia.

The case went to trial in February 2015. Allouche requested a jury instruction regarding his eligibility to naturalize under Section 316, but the district court declined to include this instruction. The jury acquitted Allouche as to Count I and convicted him as to Counts II and III. Allouche moved for acquittal as to Count II, arguing that the Government had failed to prove its case beyond a reasonable doubt. The district court denied this motion. Allouche was sentenced to sixty months' imprisonment and stripped of his U.S.

No. 15-50409

naturalization and citizenship pursuant to 8 U.S.C. § 1451(e). This appeal followed.

## II. DISCUSSION

While Allouche raises eleven issues on appeal, we address only his challenge to the sufficiency of the evidence supporting his conviction as to Count II.

### A.    Standard of Review

Allouche preserved his challenge to the sufficiency of the evidence by moving for acquittal in the district court. Thus, we review his sufficiency challenge de novo. *United States v. Danhach*, 815 F.3d 228, 235 (5th Cir.), *cert. denied*, 137 S. Ct. 119 (2016). A sufficiency challenge requires us to "review[] the record to determine whether, considering the evidence and all reasonable inferences in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Vargas-Ocampo*, 747 F.3d 299, 303 (5th Cir. 2014) (en banc).

### B.    Analysis

Section 1425 punishes unlawful procurement of naturalization in two ways. First, Section 1425(a) punishes one who "knowingly procures or attempts to procure, contrary to law, the naturalization of any person." 18 U.S.C. § 1425(a). Second, § 1425(b) punishes one who, "whether for himself or another person not entitled thereto, knowingly issues, procures or obtains or applies for or otherwise attempts to procure or obtain naturalization." *Id.* § 1425(b). While "subsection (a) covers illegal means of procurement," i.e., "an illegality played some role in [the] acquisition" of citizenship, "subsection (b) covers simple lack of qualifications." *Maslenjak v. United States*, 137 S. Ct. 1918, 1925 n.2 (2017). The penalties for violating either subsection include both imprisonment and mandatory denaturalization, *see* 8 U.S.C. § 1451(e).

No. 15-50409

In *United States v. Moses*, this Court outlined three elements the Government must prove to sustain a conviction under § 1425(b): "(1) the defendant issued, procured, obtained, applied for, or otherwise attempted to procure naturalization or citizenship; (2) the defendant is not entitled [to] naturalization or citizenship; and (3) the defendant knows that he or she is not entitled to naturalization or citizenship." 94 F.3d 182, 184 (5th Cir. 1996). The second element is at issue in this case.

At trial, the Government introduced evidence showing that Allouche was not entitled to naturalization under Section 319 because he was separated from his wife. Allouche does not challenge this evidence on appeal. Instead, Allouche argues that he was entitled to naturalization under Section 316.

As discussed above, Section 316 permits a lawful permanent resident to naturalize after five years of continuous residence in the United States, provided that he is physically present in the United States for at least half that time and "is a person of good moral character." 8 U.S.C. § 1427(a). Absences from the United States for more than six months during that period are presumed to destroy the continuity of residence. *Id.* § 1427(b). But there is an exception for translators supporting U.S. Armed Forces; these individuals maintain their continuous residence for the duration of their employment abroad. *See* Admission of Translators and Interpreters as Special Immigrants, Pub. L. No. 110-36, § 1(c)(2), 121 Stat. 227, 228 (2007) (adding subsection (e) to § 1059 of the National Defense Authorization Act for Fiscal Year 2006) (codified as amended at 8 U.S.C. § 1101 note).

Allouche introduced evidence suggesting he was eligible to naturalize under Section 316. Specifically, Allouche seems to have qualified for the translator exception described above, having served as an interpreter for the U.S. Army in Iraq during his 233-day absence from the United States in 2008. Moreover, after submitting his naturalization application, Allouche filed an N-

No. 15-50409

470 form in order to preserve his continuous residence upon returning to Iraq. The U.S. Government approved this form. Based on this evidence, Stanley Shaffer—who interviewed Allouche and approved his naturalization—essentially conceded at trial that Allouche could have been eligible to naturalize under Section 316.

The district court treated this evidence as irrelevant because Allouche was naturalized under the marital provision at Section 319. But this is a distinction without a difference. Citizenship obtained under Section 319 is the same as citizenship obtained under Section 316. Indeed, a naturalized citizen "possess[es] all the rights of a native citizen," save the right to be eligible for the presidency. *Schneider v. Rusk*, 377 U.S. 163, 166 (1964) (quoting *Osborn v. Bank of U.S.*, 22 U.S. (9 Wheat.) 738, 827 (1824)). Thus, the fact that Allouche was ineligible for naturalization under Section 319 does not prove that he was "not entitled" to naturalization within the meaning of § 1425(b).

The district court alternatively held that Allouche lacked good moral character—and therefore was ineligible to naturalize even under Section 316—because he lied during his naturalization interview. The court based this holding on the fact that "false testimony for the purpose of obtaining [immigration] benefits" destroys a person's good moral character. 8 U.S.C. § 1101(f)(6).

But the district court's holding goes against the approach this Court has taken in previous cases.[1] In *Moses*, the Court first found that the defendant lied about his marital status in his naturalization application. 94 F.3d at 186. But the Court did not immediately conclude that Moses was not entitled to naturalization. Instead, the Court then turned to "[t]he more difficult issue in

---

[1] Indeed, no court has held that a defendant who is otherwise entitled to citizenship violates § 1425(b) merely by lying in a naturalization application.

this case[:] . . . whether the Government presented sufficient evidence that Moses was not entitled to citizenship based on the fact that he and [his wife] did not reside together." *Id.* The Court examined evidence showing that "the INS would not have approved Moses's application *if he had been truthful about his marital situation.*" *Id.* at 187 (emphasis added). The Court held that there was sufficient evidence, independent of the falsified application, to support the finding that Moses was not entitled to naturalization. Specifically, the evidence indicated that although Moses was still married, his marriage had irrevocably dissolved. *Id.* at 187. Thus, Moses no longer lived "in marital union" within the meaning of Section 319.[2] 8 U.S.C. § 1430(a); 8 C.F.R. § 319.1(b). The Court affirmed Moses's § 1425(b) conviction. *Moses*, 94 F.3d at 187.

This Court followed a similar approach in *United States v. Sodosky*, 54 F. App'x 794 (5th Cir. 2002) (per curiam). There, the Court recognized that the defendant had lied during the application process but held that this evidence was "irrelevant" in a prosecution under § 1425(b). *Id.* The Court explained that lying in a naturalization application violates 18 U.S.C. § 1001, but "Sodosky was not charged under" that statute; "[r]ather, Sodosky was only charged under 18 U.S.C. § 1425(b)." *Id.* In other words, § 1425(b) only applies when an applicant *who is independently ineligible* procures citizenship. Turning to whether the defendant was not entitled to naturalization independent of whether she lied during the application process, the Court concluded that the Government had not proved Sodosky was ineligible based on her lack of good moral character. *Id.* Thus, the Court reversed Sodosky's conviction for lack of sufficient evidence. *Id.*

---

[2] Moreover, it appears that Moses, unlike Allouche, could not have been eligible under any other provision of the INA.

No. 15-50409

The approach we took in *Moses* and *Sodosky* accords with the Supreme Court's recent opinion in *Maslenjak*. In that case, the Court addressed whether an immaterial false statement made during a naturalization proceeding could support a § 1425(a) conviction. The Court held that the false statement must bear some causal connection to naturalization. Where "the facts the defendant misrepresented are themselves disqualifying, . . . [t]he Government need only expose that lie to establish that she obtained naturalization illegally—for had she told the truth instead, the official would have promptly denied her application." 137 S. Ct. at 1928. Alternatively, where "the misrepresented fact was sufficiently relevant to one or another naturalization criterion that it would have prompted reasonable officials . . . to undertake further investigation, . . . the Government need only establish that the investigation 'would predictably have disclosed' some legal disqualification." *Id.* at 1929 (quoting *Kungys v. United States*, 485 U.S. 759, 774 (1988)). But, the Court cautioned, "qualification for citizenship is a complete defense to a prosecution brought under § 1425(a)"—just as it is in a civil denaturalization proceeding. *Id.* at 1930. This is so "even though she concealed or misrepresented facts that suggested" she was not qualified. *Id.* "Section 1425(a)," the Court explained, "is not a tool for denaturalizing people who, the available evidence indicates, were actually qualified for the citizenship they obtained." *Id.* Although the Court's holding was limited to § 1425(a), its cautionary instruction seems even more relevant to § 1425(b)—which explicitly requires that the defendant not be entitled to citizenship.

Following this Court's approach in *Moses* and *Sodosky*, the key question is whether Allouche would have been entitled to naturalization had he not lied about his marital status. As discussed above, evidence in the record suggests he would have been eligible under the continuous residence provision at

Section 316. The truth about Allouche's marital status would have had no bearing on his eligibility under this section.

In response, the Government points to additional facts that could have undermined Allouche's eligibility under Section 316. For example, Allouche fraudulently altered a Department of Defense authorization letter, which could serve as independent evidence of Allouche's lack of good moral character. But the indictment did not allege this conduct, nor did it allege lack of good moral character more generally. Instead, the indictment based the § 1425(b) charges on Allouche's allegedly false statements about his marital status and membership in a terrorist organization. Admitting evidence of unrelated facts to support a § 1425(b) conviction would fundamentally alter the Government's theory, thereby constructively amending the indictment. *Compare United States v. Adams*, 778 F.2d 1117, 1124–25 (5th Cir. 1985) (finding constructive amendment where the government presented an uncharged factual basis for conviction at trial), *with United States v. Thompson*, 647 F.3d 180, 186 (5th Cir. 2011) (finding no constructive amendment where "the government presented a single, consistent theory of conviction throughout" the case). Accordingly, such facts cannot show that Allouche lacked good moral character and therefore was ineligible to naturalize under Section 316.

In light of Allouche's potential eligibility to naturalize under Section 316, no rational, properly instructed juror could find beyond a reasonable doubt that Allouche was not entitled to naturalization based on the theories presented in the Government's indictment. Thus, insufficient evidence supported Allouche's § 1425(b) conviction.

### III. CONCLUSION

For the foregoing reasons, we REVERSE Allouche's § 1425(b) conviction and corresponding denaturalization order, and AFFIRM his § 1001 conviction.